PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.  1:20CR0302 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| WILLIAM ELLIS, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 37] |

Pending is Defendant William Ellis's Motion to Suppress (ECF No. 37).  Defendant

moves the Court to suppress the evidence seized when police executed a search warrant

at his home.  The Court has been advised, having reviewed the record, the parties' briefs, and the

applicable law.  The Court has also considered the testimony of witnesses,[1] and arguments of

counsel offered during the evidentiary hearing.  For the reasons set forth below, the motion is

granted.

**I.  Background**

On May 18, 2020, law enforcement executed a search warrant at Defendant's

residence ("the Residence") located on E. 127th Street in Cleveland, Ohio.  *See* Government's

Response in Opposition (ECF No. 43) at PageID #: 370 n. 9.  During the search of the

Residence, Defendant ran to the bathroom and back to his bedroom prior to being detained.

Officers observed numerous empty bags and pills around the toilet, indicating Defendant may

---

[1]  Detective Jeffrey Yasenchack did not testify at the Suppression Hearing.

(1:20CR0302)

have flushed contraband.  Affidavit in Support of a Criminal Complaint (ECF No. 1-1) at PageID #: 6, ¶ 19.

Prior to a complete search of the Residence, Defendant, after waiving his *Miranda* rights, stated that he only flushed Percocet pills and "could not remember" if a firearm would be in his bedroom.  During the search, the police located a loaded Smith and Wesson .38 caliber revolver.  ECF No. 1-1 at PageID #: 6-7, ¶ 19.  Law enforcement also located a bag of yellow powder in a coat in Defendant's closet, ammunition boxes, ammunition, and drug paraphernalia (including a drug press, containers, and blenders).  ECF No. 1-1 at PageID #: 7, ¶ 20.  Defendant, a convicted felon, is not legally allowed to possess a firearm or ammunition.

On May 18, 2020, Magistrate Judge William H. Baughman, Jr. signed a Criminal Complaint, charging Defendant with a violation of 18 U.S.C. § 922(g), felon in possession of a firearm.  ECF No. 1.  In June 2020, a federal grand jury indicted Defendant for possession with intent to distribute carfentanil, heroin, fentanyl, cocaine, and tramadol, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  ECF No. 14.

## II.  Analysis

Defendant argues that the Affidavit in support of the search warrant (ECF No. 37-4 at PageID #: 343-47) for his Residence did not establish probable cause because the information in the affidavit contained false information or statements made with reckless disregard for the truth and included a material omission.  Defendant argues that the preponderance of the evidence establishes that Det. Yasenchack made misleading and false statements regarding an interaction

2

(1:20CR0302)

with a "concerned citizen;" the timing and status of Defendant's previous state court case; and a "confidential informant."

### A.  Probable Cause for a Search Warrant

The Fourth Amendment mandates that search warrants may only be issued "upon probable cause, supported by Oath or affirmation."  U.S. Const. Amend. IV.  "[T]o establish probable cause for a search, an affidavit must show a likelihood of two things:  first, that the items sought are 'seizable by virtue of being connected with criminal activity'; and second, 'that the items will be found in the place to be searched.'"  *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 n. 6 (1978)).  Otherwise put, a warrant must be supported by an affidavit indicating "a 'fair probability' that evidence of a crime will be located on the premises of the proposed search."  *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (citing *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)).  Whether the affidavit demonstrates probable cause "depends on the totality of the circumstances."  *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)).

"The findings of the state court judge who issued the search warrant are entitled to great deference, and should be overturned only if they are found to be arbitrary."  *United States v. Hernandez*, No. 2:15-cr-97, 2016 WL 5387692, at * 3 (S.D. Ohio Sept. 27, 2016) (citing *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010)).  To encourage law enforcement officers to seek warrants, the Supreme Court has counseled that in close calls, doubtful warrants should be upheld.  *Gates*, 462 U.S. at 237 n. 10.  "Although sloppiness [in drafting the affidavit] may raise

3

(1:20CR0302)

flags, it is not in any way fatal because search warrant affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation.'" *United States v. Brooks*, 594 F.3d 488, 490 (6th Cir. 2010) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). To determine if probable cause exists, the issuing judge must undertake a "practical, common-sense" evaluation of "all the circumstances set forth in the affidavit before him." *Gates*, 462 U.S. at 238. A court looks "only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citing *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003)).

In *United States v. Carpenter*, 360 F.3d 591 (6th Cir. 2004) (*en banc*), the Sixth Circuit held that because the Fourth Amendment requires a search warrant to describe particularly the place to be searched and the persons or things to be seized, the affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched. *Id. at 594*. The connection between the residence and the evidence of criminal activity must be specific and concrete, not "vague" or "generalized." *Id.* at 595. Whether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of circumstances presented. *See Gates*, 462 U.S. at 238; *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013).

### B. *Franks* Hearing

Under *Franks v. Delaware*, 438 U.S. 154, 171 (1978), a defendant has the right to "challenge the sufficiency of an executed search warrant by attacking the veracity of the affidavit supporting the warrant." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). There is "a

4

(1:20CR0302)

presumption of validity with respect to the affidavit supporting the search warrant."  *Franks*, 438

U.S. at 171; *United States v. Fountain*, 643 Fed.Appx. 543, 545 (6th Cir. 2016).

> . . . A defendant may request an evidentiary *Franks* hearing if he "raises a
> substantial question as to whether the affidavit supporting the search warrant
> contained materially false information."  This requires making a "substantial
> preliminary showing" of knowing or reckless falsity.  If the defendant is able to
> show deliberate falsity or reckless disregard for the truth, those portions of the
> affidavit are set aside, and the remaining content is analyzed to determine if it
> supports probable cause.  Thus, the offending information must be essential to a
> probable cause finding.  Innocent or negligent mistakes are not enough.

*United States v. Stone*, 676 Fed.Appx. 469, 473 (6th Cir. 2017) (citations omitted).  "A defendant

is entitled to a *Franks* hearing if he:  1) makes a substantial preliminary showing that the affiant

knowingly and intentionally, or with reckless disregard for the truth, included a false statement

or material omission in the affidavit; and 2) proves that the false statement or material omission

is necessary to the probable cause finding in the affidavit."  *United States v. Rose*, 714 F.3d 362,

370 (6th Cir.2013) (citing *Franks*, 438 U.S. at 171-72.  Typically, "[a]n evidentiary hearing is

required [when] the motion [to suppress] is sufficiently definite, specific, detailed, and

non-conjectural to enable the court to conclude that contested issues of fact going to the validity

of the search are in question."  *See United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019).

However, in *Franks*, the Court established a more stringent standard applicable when the

"defendant [ ] claim[s] that the affidavit supporting the probable cause of a search warrant

contained intentional or reckless falsehoods."  *United States v. Abboud*, 438 F.3d 554, 574 (6th

Cir. 2006) (citing *Franks*, 438 U.S. at 171).  In such situations, the affidavit is presumed valid,

and the defendant has the burden of making a "substantial preliminary showing that a false

5

(1:20CR0302)

statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit[.]"  *Franks*, 438 U.S. at 155-56, 171.  If the defendant meets this burden, then the question becomes whether the affidavit is sufficient to support probable cause without the falsehoods.  *Id.* at 171.  If it is sufficient, then the warrant is valid.  *Id.* at 171-72.  If it is insufficient, then the defendant is entitled to a hearing concerning the probable cause in the affidavit.  *Id.* at 172.

A defendant alleging that an officer made material omissions in the affidavit carries a higher burden than a defendant alleging that an officer made false affirmative statements because of the "potential for endless rounds of *Franks* hearings due to potentially endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit."  *Fowler*, 535 F.3d at 415-16 (internal quotations and citations omitted).  By analogy to the standard for *included* false statements, a defendant is entitled to a *Franks* hearing on the basis of alleged material omissions only if:  "(1) the defendant makes a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit; and (2) a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it."  *Id.* at 415.  "What makes this burden more onerous than the inclusion of a false statement is that the defendant must show that the affiant omitted facts with the intention to mislead the [ ] judge.  *United States v. Hampton*, 760 Fed.Appx. 399, 404 (6th Cir. 2019) (citing *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998)).

6

(1:20CR0302)

Defendant is entitled to a *Franks* hearing because he has made a substantial preliminary showing that Det. Yasenchack:  (1) engaged in deliberate falsehood or a reckless disregard for the truth by allegedly intentionally including false allegations in his Affidavit in support of the search warrant (ECF No. 37-4 at PageID #: 343-47); and (2) omitted from the Affidavit that a state court judge found that he lied about Defendant.

The evidence establishes that the allegations in paragraph 5 of the search warrant affidavit (ECF No. 37-4 at PageID #: 345) that two people stopped by Det. Yasenchack identified Defendant as "their dealer" and told the detective they had purchased drugs from him were false.  Det. Yasenchack also alleged that a man leaving Defendant's house (one of the two "confidential informants")[2] said he bought heroin and fentanyl from Ellis.  Det. Yasenchack recovered fentanyl from Radovanic and his passenger.[3]  The substance recovered from the people in the vehicle field tested positive for fentanyl.  ECF No. 37-4 at PageID #: 345-46, ¶¶ 4-6.  During the evidentiary hearing, Radovanic and Smith admitted to conduct (possessing drugs) against their own interests.  *See United States v. Harris*, 403 U.S. 573, 583 (1971) (noting that "[a]dmissions of crime, like admissions against proprietary interests, carry their own indicia of credibility").  But, Radovanic told a defense investigator that he did not buy drugs from Defendant and has never seen Ellis sell drugs to anyone.  Declaration of Herman Ramos (ECF No. 37-6) at ¶ 3.  Radovanic testified he was stopped by Det. Yasenchack shortly after leaving Defendant's home on East 127th Street.  Transcript of Suppression Hearing (ECF No. 53) at

---

[2]  Matthew Radovanic, whom testified at the evidentiary hearing.

[3]  Vanessa Smith, whom also testified at the hearing.

7

(1:20CR0302)

PageID #: 476; 486.  Radovanic and Smith each testified at the suppression hearing that they did

not get drugs from Defendant and they did not tell Det. Yasenchack that they had.

> **Q.** Did he ever ask you about Mr. Ellis during his --
> **A.** He never asked me -- he didn't ask me, no.
> **Q.** Okay.  Did he -- did you ever indicate to him that you obtained those drugs from Mr. Ellis?
> **A.** No, sir, I did not.

ECF No. 53 at PageID #: 479; *see also* ECF No. 53 at PageID #: 487.  Smith testified:

> **Q.** Okay.  Did you tell him that Matt had gotten the drugs from Mr. Ellis?
> **A.** No.
>                          *   *   *
> **Q.** Okay.  Did he ask specifically if Matt got the drugs from Mr. Ellis?
> **A.** Yes, he did.
> **Q.** Okay.  And what did you say?
> **A.** I didn't answer -- or Matty -- or Matthew answered and he said that he did not.

ECF No. 53 at PageID #: 497-98.  Radovanic also testified that he did some renovation work for

Defendant.  ECF No. 53 at PageID #: 476.[4]

Det. Yasenchack testified against Ellis in a prior state court case, *State v. Ellis*, No. CR-19-637876-A (Cuyahoga Cnty. Common Pleas filed March 13, 2019), involving a traffic stop

and subsequent search inside Ellis's underwear on a public street.  The court found Det.

Yasenchack "not credible."  It stated that Det. Yasenchack's claims that Ellis "was noncompliant

with regards to spreading his legs sufficiently, that he actually had pushed off of the vehicle and

---

[4] In its Opposition, the Government avers that, during a review of the contents of Defendant's phones, the Government could not find a single conversation or text message to Defendant from Radovanic using a "-1400" phone number related to "renovation work."  Instead, the Government avers that it recovered text messages indicative of drug sales between Defendant and Radovanic.  *See* ECF No. 43 at PageID #: 369.

(1:20CR0302)

caused himself to fall" were "in direct contradiction to what was presented via the body cameras to this Court during the suppression hearing," Transcript of Ruling on Motion to Suppress in State Court Case (ECF No. 51-1) at PageID #: 453, and "that the credibility of the officer was severely diminished and not credible," ECF No. 51-1 at PageID #: 454.  Det. Yasenchack knew that the state court had found him not credible, but did not include the information in the search warrant affidavit (ECF No. 37-4 at PageID #: 343-47), choosing instead to leave the false impression about his credibility and that there was nothing about Ellis's state court case that was unusual or that bore on the probable cause determination for the search warrant he sought in the case at bar.

On April 22, 2020, the state court of appeals dismissed the State's appeal for lack of jurisdiction.  *State v. Ellis* No. CA-19-108970 (Ohio App. 8th Dist. filed Sept. 5, 2019).; ECF No. 37-3 at PageID #: 339.  On May 13, 2020, the State filed a Motion to Dismiss Indictment in the trial court.  The motion was granted before 10:00 a.m. the next day.  Therefore, the indictment in the state court case was dismissed on the morning of May 14, 2020 – the very same day the Affidavit in support of the search warrant (ECF No. 37-4 at PageID #: 343-47) at issue in the case at bar was presented to a different state court judge.  The Affidavit provides, in relevant part:  ". . . Affiant arrested Ellis in 2019 having in his possession heroin, carfentanil, cocaine, and marijuana during a traffic stop.  This case is open and currently in appeals court."  ECF No. 37-4 at PageID #: 345, ¶ 3.  The last sentence in ¶ 3 of the Affidavit in support of the search warrant is false – the case had been dismissed by the appeals court three weeks prior.  In any event, the case in the state appellate court had been closed by the time the search warrant was

(1:20CR0302)

executed in the case at bar.  This is an instance in which the affiant "engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit." *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997).

Det. Yasenchack's response to the ultimate dismissal of the indictment in the state court case, by his own account, was to investigate Ellis for other potential crimes, and to do so on his own.  He did not turn over information he allegedly learned to another police officer to investigate or have another officer accompany him so that officer could confirm  Det. Yasenchack's account of what he saw or what people told him.  With one exception, he did not record what he says people told him.[5]  Det. Yasenchack did not photograph or video that he allegedly observed.  He provided nothing to ensure that a court could confirm that he was telling the truth this time, after he had been found not telling the truth about Ellis in the state court case.

Det. Yasenchack also alleged that a "concerned citizen" told him Defendant was selling drugs from his home, ECF No. 37-4 at PageID #: 345, ¶ 1, but recorded video (ECF No. 42) shows only that Det. Yasenchack pressured and threatened the "concerned citizen" with at least a traffic citation to gain information from him, then turned off  his body camera before whatever was next said or done that may have been of value to the Court's credibility determination.[6]  The person dismounted from a motorcycle and told Det. Yasenchack that he was bringing coffee to his sick brother and asked, "let me get a pass, [S]arge."  Det. Yasenchack then indicated that he

---

[5]  As discussed below, even when Det. Yasenchack used a recording device, he terminated the recording before it could capture any corroborating information.

[6]  The Government has provided the name of the "concerned citizen" to Defendant.  *See* ECF No. 37 at PageID #: 191.

(1:20CR0302)

would do so only on a condition:  "Give me some information about something."  And he started to tell the person what kind of information he wanted to hear:  he said he was a vice detective, and asked, "so, any drugs?"  The search warrant affidavit alleges that the man offered information about Ellis.  ECF No. 37-4 at PageID #: 345, ¶ 1.  Even if he did, it is false to characterize that person as a "concerned citizen."[7]

In considering the Affidavit in support of the search warrant (ECF No. 37-4 at PageID #: 343-47), including the false portions and the omitted portions that Defendant believes should have been included, *see* ECF No. 59 at PageID #: 617,[8] the Court concludes the search warrant affidavit lacks probable cause to search Defendant's Residence.

### C.  Good Faith Defense

If, assuming *arguendo*, the Affidavit did not establish probable cause, the Government argues the good faith exception to the exclusionary rule bodes against suppressing evidence seized from the Residence located on E. 127th Street in Cleveland, Ohio.  *See* ECF No. 43 at PageID #: 378-79.  In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court noted that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates."  *Id.* at 916.  The Supreme Court held that the exclusionary rule does not exclude evidence that was seized in "objectively reasonable reliance on a subsequently

---

[7] At best, the citizen was concerned about himself, not any ongoing vice investigation.

[8] The Reconstructed Affidavit (ECF No. 59-1) was solicited by the Court.  *See* ECF No. 53 at PageID #: 466-67; 533.

11

(1:20CR0302)

invalidated search warrant."  *Id.* at 922; *see also United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006).  In other words, as long as the Affidavit in support of the search warrant (ECF No. 37-4 at PageID #: 343-47) in the case at bar is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," it falls within the good faith exception.  *United States v. Canan*, 48 F.3d 954, 959 (6th Cir. 1995).

The Supreme Court identified four situations in which an officer's reliance is not objectively reasonable:  (1) when the affidavit contains information that the affiant knows, or is reckless in not knowing, is false; (2) when the issuing magistrate abandons her neutral and detached judicial role; (3) when the affidavit is "bare bones" and severely lacks probable cause; and (4) when the warrant is so facially deficient that it cannot be presumed to be valid.  *Leon*, 468 U.S. at 914, 915, 923.

Focusing on the first scenario, the Court finds that the state court judge who issued the search warrant did so after being presented with an affidavit containing misleading information (ECF No. 37-4 at PageID #: 343-47) resulting from Det. Yasenchack's false statements or omissions.[9]  In other words, the warrant was issued in reliance on information that Det. Yasenchack knew was false or would have known was false except for his reckless disregard of the truth.  The Supreme Court instructs that "[w]hether the exclusionary sanction is appropriately imposed in a particular case . . . must be resolved by weighing the costs and benefits of [suppression of evidence obtained by a] warrant issued by a detached and neutral magistrate that

---

[9]  The omissions are significant as well.  But the false information included is sufficient for the Court's ruling.

(1:20CR0302)

ultimately is found to be defective." *Leon*, 468 U.S. at 906-907.  The benefit to be gained by

exclusion is the deterrence of possible future Fourth Amendment violations by police.  *Herring*

*v. United States*, 555 U.S. 135, 141 (2009).  "The principal cost of applying the rule is, of course,

letting guilty and possibly dangerous defendants go free."  *Id.*  "[T]he question," therefore,

"turns on the culpability of the police and the potential of exclusion to deter wrongful police

conduct."  *Id.* at 137.

   Under the facts of this case, the Court has no difficulty seeing the deterrence value of

suppression.  Det. Yasenchack was dishonest or reckless in the execution of his duties as a law

enforcment officer, again.  This is exactly the kind of circumstances the exclusionary rule means

to address.  Therefore, the balance of deterrence of law enforcement overreach against the cost to

society of suppressing evidence leads to the conclusion that the good faith exception as

contemplated by *Leon* does not apply in the case at bar.  *See also* ECF No. 53 at PageID #: 468-

70.

### III.  Conclusion

   For the reasons set forth above and those that have been articulated in the memoranda of

the points and authorities on which Ellis relies in support of the motion, Defendant's Motion to

Suppress (ECF No. 37) is granted.  The Court suppresses the evidence found when police

searched Defendant's residence located on E. 127th Street in Cleveland, Ohio and the fruits of

that search.

   Counsel are reminded that this case is set for a jury trial on August 2, 2021 at 9:00 a.m.

A motion to continue, with an ends of justice waiver, to allow further considerations, given this

13

(1:20CR0302)

ruling, will be well taken if received not later than 4:00 p.m on Wednesday, July 28. 2021. *See*

Order (ECF No. 36); Amended Criminal Pretrial and Trial Order (ECF No. 31).


IT IS SO ORDERED.


_____July 27, 2021_____                          ___*/s/ Benita Y. Pearson*_____
Date                                                          Benita Y. Pearson
                                                                  United States District Judge

14